IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GREG HOLMES                                                                    PLAINTIFF

v.                           CASE NO. 4:12CV00030 BSM

METOTT, INC.,
MICHAEL METOTT, AND
FEDEX GROUND PACKAGE SYSTEM, INC.                          DEFENDANTS

## ORDER

Defendants Metott, Inc. ("Metott") and Michael Metott ("Michael") move for summary judgment. [Doc. Nos. 16-18]. Defendant FedEx Ground Package System, Inc. ("FedEx") also moves for summary judgment. [Doc. Nos. 21-23]. Holmes objects to both motions. [Doc. Nos. 28-31]. For the reasons stated below, Metott's and Michael's motion for summary judgment [Doc. No. 16] is granted on all claims except Holmes's retaliation claim. FedEx's motion for summary judgment [Doc. No. 21] is granted.

## I. FACTUAL BACKGROUND

Metott is a closely held corporation whose sole shareholders are Michael and his wife. The record indicates that Michael manages the operations of Metott, which has a contract with FedEx to deliver parcels for FedEx within a defined geographical area. As an independent contractor for FedEx, Metott hires and fires its employees and owns and maintains the trucks used for delivering FedEx parcels. The trucks Metott uses to deliver FedEx parcels bear the FedEx logo and its employees delivering FedEx parcels wear FedEx uniforms. Although Metott trains and manages its employees, FedEx trains Metott's

employees on how to use its scanners to scan packages and FedEx instructs Metott's drivers on daily logistics of delivery. Although FedEx does not pay or manage Metott's employees, each of Metott's drivers assigned to deliver FedEx parcels has to pass certain tests administered by FedEx, including a safety screening, a road test, and a drug test required by the Department of Transportation ("DOT"). FedEx's contract with Metott also permits FedEx to disqualify a driver from delivering FedEx parcels, if Metott consents to it.

Plaintiff Greg Holmes was hired by Metott in October of 2009, after interviewing with Michael. He was paid $650 per week regardless of the number of hours he worked. Metott established a delivery route for Holmes and another Metott driver trained him on the route. On March 1, 2011, Holmes asked Michael about his pay and why he was not being paid overtime. He later spoke to Michael on the telephone about it. Michael informed Holmes on both occasions that he was paid daily and not for overtime. Holmes told Wayne Allen, the senior manager of the FedEx terminal, that he did not like the way he was being paid and that he disagreed with his pay rate.

During the time he was employed by Metott, approximately thirty complaints were made against Holmes. When a complaint is made to FedEx about a driver, FedEx notifies the contractor, who is ultimately held responsible. FedEx documented the complaints, and Michael addressed the issues with Holmes as they arose. The complaints against Holmes were recorded as "business discussion records," and ranged from missing packages, scanning issues, and missed or late pickups. Two were customer complaints centering on Holmes's poor driving and customer service. In fact, at least one FedEx customer refused to allow

2

Holmes to deliver to its address. The last documented complaint was on March 22, 2011.

On April 1, 2011, Metott terminated Holmes due to performance and scanning issues. After his termination, Holmes asked Michael about the reasons for his termination. Michael told him that he was fired because of the complaints and scanning compliance issues. Michael also told Holmes that Wayne Allen, senior manager of the FedEx ground terminal, did not want him making FedEx deliveries anymore.

Holmes sent certified letters to Michael and Allen asking for documentation as to the reasons for his termination, but received no response. Holmes believes he was treated poorly by Michael and by Allen because he is black. Holmes states that Michael used racist language to describe a black customer who was being difficult and recalls one other specific instance in which Michael told a racist joke.

Holmes filed suit on September 22, 2011, alleging the defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime and firing him in retaliation for bringing a complaint under the FLSA. In the alternative, he alleges that he was the victim of race discrimination in violation of 42 U.S.C. 1981 and the Arkansas Civil Rights Act ("ACRA") because he was not paid overtime while white drivers were.

## II. LEGAL STANDARD

Summary judgment is proper if, after the evidence is viewed and all reasonable inferences are drawn in the light most favorable to the nonmoving party, no genuine issue of material fact exists. *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008); Fed. R. Civ. P. 56. In seeking summary judgment, a party bears the responsibility of

informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not, however, required to support its motions with affidavits or other materials negating its opponent's claims. *Id.*

Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must, by affidavits or as otherwise provided for in Rule 56, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 587 (1986). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Id.* Further, the nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in its favor on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party bears the burden of proof at trial, the entry of summary judgment against the nonmoving party is mandated by Rule 56(c). *Celotex Corp.*, 477 U.S. at 322.

A properly supported motion for summary judgment requires that no genuine issue of material fact exists and it will not be defeated by the mere existence of some alleged factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). A genuine issue of material fact exists where: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, all reasonable inferences are to be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A. <u>Fair Labor Standards Act Claims against FedEx</u>

FedEx's motion for summary judgment is granted because FedEx was not a joint employer. The FLSA defines an employer as "any [individual or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In analyzing joint employment, a court will generally look to the economic realities of the arrangement. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005). Four factors should be weighed in determining whether a joint employer relationship exists: (1) who had the power to hire and fire the employee; (2) who supervised the employee and controlled his work schedule or conditions of employment; (3) who determined the employee's rate and method of payment; and (4) who maintained the employee's employment records. *Arnold v. DirecTV, Inc.*, 2011 WL 839636, at *6 (E.D. Mo. March 7, 2011); *Dole v. Cont'l Cuisine, Inc.*, 751 F.Supp. 799, 802-03 (E.D. Ark. 1990).

Even when the facts are viewed in the light most favorable to Holmes, he cannot show that FedEx was a joint employer. As to the first factor to be weighed, it is clear that Metott had total authority to hire and fire Holmes. It is undisputed that FedEx played no part in

5

Metott's hiring of Holmes. While a FedEx manager may have notified Metott that he did not want Holmes making any more FedEx deliveries, it is clear that only Metott had authority to terminate Holmes's employment. Indeed, Metott's contract with FedEx specifically provides that FedEx cannot disqualify a driver from delivering FedEx parcels without Metott's permission and that Metott may continue to employ a driver that has been disqualified from making FedEx deliveries. As for the second factor, it is clear that FedEx exercised some degree of control over Holmes's working conditions because it required Holmes to pass a safety screening test and a road test, and it provided direction as to the logistics of daily delivery. While this is true, Metott set Holmes's work schedule, established his delivery route, and owned and maintained the truck Holmes drove. As for the third and fourth factors, the record is clear that only Metott determined Holmes's rate and method of pay, and that FedEx had no role in maintaining Holmes's employment records.

For all of these reasons, summary judgment is granted as to Holmes's FLSA claims against FedEx.

B.   Fair Labor Standards Act Claims Against Metott

Holmes alleges that Metott violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime and by retaliating against him for requesting overtime pay. In response, Metott states that it is exempt from the FLSA and that there is no evidence of retaliation. Summary judgment is granted on the overtime claim and denied on the retaliation claim.

*1. FLSA Overtime Claims*

The FLSA overtime requirements do not apply to "any employee with respect to

whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" pursuant to the provisions of the Motor Carrier Act ("MCA"). 29 U.S.C. 213(b)(1); *see also Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 912 (D. Minn. 2010). To establish that it falls within the exemption, an employer must show it meets three criteria: (1) it is an employer whose transportation of passengers or property by motor vehicle is under the jurisdiction of the Secretary of Transportation; (2) the employee is a driver, driver's helper, loader or mechanic, and (3) the employee engages "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." 29 C.F.R. §§ 782.2(a)-(b)(2); *See also Graham*, 865 F.Supp.2d at 956. An employer bears the burden of demonstrating that the exemption, which is construed narrowly, applies. *Id.*

Although the burden is upon Metott to demonstrate that the exemption applies, Holmes does not dispute Metott's claim that it is exempt. The first requirement for exemption is met because Metott falls under the jurisdiction of the Secretary of Transportation. The secretary has authority to prescribe requirements for "commercial motor carriers," a definition that includes vehicles used to transport property and weighing at least 10, 001 pounds. 49 U.S.C. § 31301(4)(a). The truck driven by Holmes weighed approximately 22, 500 pounds. The second requirement for exemption is met because Holmes was a driver for Metott. The third requirement for exemption is also met because Metott's vehicles were used to transport property in interstate or foreign commerce. This is true because drivers who do not travel outside the state of Arkansas participate in interstate

commerce if their activities constitute a part of a continuous movement of freight from points outside of the state of Arkansas. *Beggs v. Kroger, Co.*, 167 F.2d 700, 704 (8th Cir. 1948). It is undisputed that approximately 90% of the parcels at the FedEx terminal in Little Rock originated from outside of Arkansas.

Accordingly, Metott falls within the MCA exemption and summary judgment is granted as to Holmes's FLSA claims for overtime.

### *2. FLSA Retaliation Claim*

Although a close call, summary judgment is denied on Holmes's retaliation claim. The FLSA prohibits employers from discharging or discriminating against an employee for filing a FLSA complaint. 29 U.S.C. § 215(a)(3). Claims of retaliatory discharge are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005). To establish a prima facie case, Holmes must demonstrate three things: (1) he participated in statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two. Id. at 1034-35. Once Holmes has done so, the burden shifts to the defendants to articulate a legitimate, non-retaliatory reason for his termination. *Id*. If the defendants are able to articulate such a reason, Holmes must then demonstrate that the stated reason is mere pretext for retaliation. *Id*.

Holmes can easily establish the second element because he was terminated. The more difficult question is whether Holmes engaged in a statutorily protected activity. The statute protects employees who file written or oral complaints, which "contemplates some degree

of formality." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1334 (2011). The employee must put the employer on notice that he or she is asserting statutory rights under the act, and the complaint "must be sufficiently clear and detailed for a reasonable employer to understand it...as an assertion of rights protected by the statute and a call for their protection." *Id*. at 1335.

To support his claim that he engaged in protected activity, Holmes points out that he asked Michael on two separate occasions about how he was paid and why he was not receiving overtime. It is undisputed, however, that when Metott asked why Holmes was inquiring, Holmes responded that he just wanted to know. Although this is very close, it is determined that a reasonable jury could conclude that Holmes's questions placed Metott on notice that Holmes was asserting rights under the FLSA. Therefore, Holmes meets the first element required for his prima facie case.

As for the causal connection between the protected activity and the adverse employment action, it is clear that Holmes's performance issues began near the time he was hired and were pervasive. He was terminated, however, only after he began complaining about the lack of overtime pay. Consequently, Holmes has met the third element for establishing a prima facie case.

The burden now shifts to Metott to articulate a legitimate, non-retaliatory reason for discharging Holmes. Metott states that Holmes was terminated because his job performance was inadequate due to continuing performance and scanning issues. In support, Metott offers a number of documented complaints against Holmes, approximately 30 between January 5,

2010, and March 22, 2011.

Because Metott articulated a legitimate reason for Holmes's discharge, Holmes must offer evidence that the stated reason is mere pretext for retaliation. It is undisputed that Holmes had experienced performance issues over the course of his employment, and there is no evidence that the issues had begun to increase in frequency before Holmes was fired. Holmes also states that Michael told him he was a good driver when Michael terminated him and that Michael advised Holmes to report that he was laid off for lack of work on his application for unemployment. Although Michael denies these statements, the question of whether pretext exists involves disputed facts best left to a jury.

Summary judgment is therefore denied on Holmes's FLSA retaliation claim against Metott.

C.   Race Discrimination Claims

Summary judgment is granted on Holmes's race discrimination claim. In his complaint, Holmes alleges that if the defendants deny that they do not pay overtime, then he asserts a race discrimination claim because white drivers were paid overtime while he was not. Metott admits that it does not pay overtime; therefore, Holmes's alternative claim is not viable. Further, even if Holmes's alternative claim is viable, he has failed to identify a specific similarly situated white employee who was paid overtime. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

IT IS SO ORDERED this 25th day of January 2013.

_____
UNITED STATES DISTRICT JUDGE